## Silas Peirce *versus* The Ocean Insurance Company.

A vessel insured at Boston, while on a voyage to Mobile, struck on Carysford reef, and was injured to the amount of more than half her value, but was got off and arrived in safety at Mobile. While she was lying at a wharf in that port, a survey was held upon her, and the surveyors having recommended a sale, she was sold by the master, who was also a part owner and one of the insured, without consulting the insurers or the agent of the owners at Boston. It was *held*, that the master, as such, was not justified, under these circumstances, in selling the vessel.

In the same case it appeared, that when the facts became known in Boston, the agent before mentioned, to whom, by the policy, the loss was made payable, called on the insurers with the protest and the other usual documents to prove a loss, and a statement setting forth a claim for a salvage loss on the vessel incurred in consequence of her getting on the reef on her voyage to Mobile, at which place she was surveyed, condemned and sold for the good of all concerned, the insurers being charged therein with the value of the vessel and credited with the proceeds of the sale, and demanded payment of a total loss ; and that an action was subsequently brought by such agent against the insurers, claiming as for a total loss, the declaration averring the interest to be in the master and the other part owners *jointly.* It was *held*, that under such declaration no distinction could be made between the rights of the other part owners and those of the master, who could not set up his own unauthorized act as the foundation for a claim for a total loss, and who was also incapacitated from making an effectual abandonment, by the sale, which passed his interest in the vessel as a part owner ; that (*semble*) the other part owners, by joining in the claim against the defendants, in which they set forth the sale and credit the insurers with the proceeds, ratified the sale, and so disqualified themselves to abandon ; that there was not in fact an abandonment, there being no relinquishment of the vessel or of any interest therein ; that if it could be considered that an abandonment was made by implication, it was made on the ground that the vessel had been condemned and sold, which did not warrant the owners in abandoning, and they could not avail themselves of the ground that the vessel was injured, by striking on the reef, to the amount of more than half her value ; and, consequently, that there was not such an abandonment, as would relate back to the time when the loss occurred, so as to constitute the master the agent of the insurers, thereby throwing on them the responsibility for such unauthorized sale, and thus render them liable as for a total loss.

Assumpsit on a policy of insurance, dated August 30th, 1833, by which the defendants insured the plaintiff, for whom it concerned, the sum of $5000, on the brig Cambridge, valued at that sum, including the premium, for one year, at sea and in port. By the terms of the policy, the sum insured was payable to the plaintiff in case of loss.

The declaration averred, that Waldo Peirce, Robert Treat and Andrew Tyler, the master, "were interested in said vessel to the amount of all the sums insured or by them caused to

Peirce
v.
Ocean Ins.
Co.

be insured thereon, and that said insurance was effected by this plaintiff by their order and on their behalf;" and the plaintiff claimed as for a total loss of the vessel by the perils of the sea, while prosecuting a voyage from New York to Mobile.

The trial was before *Putnam* J.   The plaintiff offered evidence to show, that the vessel, while prosecuting the voyage, struck on Carysford reef, and remained there in great peril, for twenty-eight hours, leaking badly ; that in order to relieve her a part of the cargo was thrown overboard, and a part discharged into wreckers, which came to her assistance ; that the vessel was then got off and carried into Key West, where she arrived on February 3d, 1834 ; that a survey was had on her at Key West, and the surveyors directed that she should proceed on her voyage to Mobile, and be there further examined ; that the vessel arrived at Mobile, on the 2d of March, and on the 15th of the same month had discharged her cargo and was lying in safety at a wharf in Mobile ; that surveys were held upon her, and estimates were made of the expenses of repairs considered necessary ; that the surveyors recommended a sale of the vessel, and she was accordingly sold by the master, by auction, on April 2d, 1834 ; that the purchaser took pos session immediately on the sale, and repaired her and sent her to sea.

In order to prove an abandonment, the plaintiff proposed to offer evidence showing, that about the 13th of May, when the facts became known in Boston, and the papers had arrived, the plaintiff, who resided in Boston, called at the office of the defendants, with the protest, and the other usual documents, to prove the loss, and a statement of the loss made up by an insurance broker, and demanded payment as for a total loss. The statement thus presented purported to be the statement of a claim for salvage loss on the vessel, occasioned by her getting on the Florida reef, on her voyage from New York to Mobile, at which latter place she was surveyed, condemned and sold for the good of all concerned ; it then charged the value of the vessel, and credited, by way of salvage, the proceeds of the sale, first deducting all charges.   The judge ruled, that this was not sufficient to prove an abandonment, but that an abandonment must be made in writing.

The defendants then offered evidence to show, that the vessel was actually repaired for a much less sum than that stated in the estimates ; and the plaintiff was about to introduce evidence to prove, that she was *imperfectly* repaired, that she could not have been made as good a vessel as she was before the accident occurred, without repairs exceeding one half of her value, after deducting one third new for old, and that in her situation a sale was for the interest of all concerned, when, on motion of the defendants, the judge ruled, that the master had no authority to sell under the circumstances, without notice to the owners and insurers, that the sale was therefore unjustifiable, and that, as there was no abandonment, the plaintiff was not entitled to recover as for a total loss, although the expenses for repairs, estimated as for a partial loss, would have exceeded half of the value of the vessel, and although a sale might have been advisable for all concerned.

The case was thereupon taken from the jury, in order that it might be submitted to the whole Court to determine upon the correctness of these rulings.

If the Court should be of opinion, upon the facts stated and the evidence offered by the plaintiff to prove the necessity or expediency of a sale, that a sale without notice to the owners and insurers, might be justifiable, or that the evidence offered by the plaintiff was admissible and competent to prove an abandonment and so enable the plaintiff to recover for a constructive total loss, a new trial was to be granted. If the Court should be of opinion, that the sale was not justifiable, so as to constitute an actual total loss, and that the evidence offered by the plaintiff to prove an abandonment, was inadmissible or incompetent for the purpose of constituting a constructive total loss, then the case was to be sent to the jury, to ascertain the facts as to the place where the vessel should have been repaired, and such other facts as might be necessary to be found by a jury, in order to enable an assessor to make up the partial loss.

*C. G. Loring* and *F. C. Loring*, for the plaintiff. The present case is distinguished from those in which it has been held that sales of the vessel by the master were unauthorized, by the circumstance, that here was a constructive total loss previously to the sale. The plaintiff does not claim a total

Peirce
v.
Ocean Ins.
Co.
loss by reason of the sale, and the liability of the defendants was not affected thereby. The authority of the master should in such case be more extensive. • It may be contended, that the master should have notified the loss to the owners, in order that they might elect either to repair or to sell ; but upon the occurrence of the loss, the master became the agent of the defendants, the abandonment relating back to the time of the loss, and the defendants are of course responsible for his acts. If the sale was unjustifiable, we say the master acted as the agent of the defendants in selling. *Col. Ins. Co.* v. *Ashby*, 4 Peters's Sup. Court. R. 139 ; *Center* v. *Amer. Ins. Co.* 7 Cowen, 564 ; *Clarkson* v. *Phœnix Ins. Co.* 9 Johns. R. 1

The abandonment was sufficient. No particular form is required. It is only necessary that the act should be explicit, or plainly implied. The statement and claims contained all the elements of an abandonment. 2 Phillips on Ins. 316 ; *Patapsco Ins. Co.* v. *Southgate*, 5 Peters's Sup. Court R. 604, 622 ; *Cassedy* v. *Louisiana State Ins. Co.* 18 Martin, 421. The statement presented to the defendants was more than a mere claim for a total loss It necessarily implied an abandonment. It will be said, that it contained no transfer of the vessel. But insurers do not rely on the informal paper by which the abandonment is made. They take a regular bill of sale ; and, in the present case, the assured would have been obliged to give a bill of sale of the vessel, if it had been required. 2 Phillips on Ins. 317, cites *Houstman* v. *Thornton*, Holt's N. P. R. 243. If the abandonment was not made in proper form, it was the duty of the president of this insurance office to have informed the plaintiff, that such was the case. But no objection was made to the abandonment, at the time, on this ground It is abundantly settled, that an abandonment may be made verbally. *Parmeter* v. *Todhunter*, 1 Campb. 541 ; *Reed* v. *Bonham*, 3 Brod. & Bing. 147 ; Benecke on Ins. 422 ; Hughes on Ins. 429.

*Fletcher* and *Peabody*, for the defendants. The sale of the vessel by the master was not justified by the circumstances, and did not render the loss total. *Bryant* v. *Commonwealth Ins. Co.* 13 Pick. 544 ; *Winn* v. *Columbian Ins. Co.* 12 Pick. 279 ; *Hall* v. *Franklin Ins. Co.* 9 Pick. 466 ; *Gordon*

ι. *Mass. F. & M. Ins. Co.* 2 Pick. 249 ; *Patapsco Ins. Co.* v. *Southgate*, 5 Peters's Sup. Court R. 604. The master is not authorized to act for the owners in such case, unless it is impracticable for them to act for themselves ; but where they can be consulted, he is not justified in selling without authority from them.

If the sale did not, *ex proprio vigore*, render the loss total, then an abandonment was necessary. By *abandonment* is meant the transfer of some property ; it must transfer the title ; and should be in writing. How can the insurers claim the property insured and enforce their claim against any one having possession thereof, unless they have an abandonment in writing, as evidence of their title ? Now the statement presented to the defendants in the present case, so far from giving them a title to the vessel as against the purchaser, actually affirms the sale, by crediting the defendants with the proceeds. It is clear that this was not a sufficient abandonment. 1 Phillips on Ins. 382, 447 ; Marshall on Ins. 610 ; *Parmeter v. Todhunter*, 1 Campb. 542 ; *Thelluson* v. *Fletcher*, 1 Esp. R. 73. By the sale and delivery of the vessel to the vendee, the insured were disabled from abandoning. 1 Phillips on Ins. 388 ; 2 Ibid. 284. At least the interest of the master in the vessel passed by the sale, he being a part owner, so there could be no abandonment ; for the entire subject of the insurance must be abandoned. 1 Phillips on Ins. 434, 435 ; Marshall on Ins. 600. If the insured paid the loss, they would be entitled to the whole vessel, instead of being tenants in common with the purchaser of the master's interest.

SHAW C. J. delivered the opinion of the Court. The only question in the present case, is whether the plaintiff is entitled to recover as for a total loss. Here the policy on the ship being on time, at all places at sea and in port, and in all employments, no question can arise respecting loss of voyage or of any particular employment or adventure, circumstances which have sometimes been complicated with other considerations in determining whether a particular disaster constituted a total loss. Another distinguishing characteristic of the present case is, that one of the owners and assured was himself master of the vessel, so that all question whether the master

*July 2d.*

Peirce
*v.*
Ocean Ins.
Co.

acted within the scope of the authority given by the owners, or conformed to the orders, and acted for the interests of the owners, is precluded.

The argument having turned upon all the questions, as to the rights of the parties, on the facts stated in the report, rather than confined to the particular points ruled at the trial, we have followed the same course.

In the first place, we think it perfectly clear, that the master, supposing him not to have been a part owner, and to have had no authority except that implied authority forced upon him as master, was not authorized to sell the vessel, so as to divest the property and leave nothing to abandon.

The principles upon which this implied authority is founded, and regulated and controlled, have been so fully discussed and considered in a series of recent cases, that it is sufficient to refer to them. *Gordon* v. *Mass. Fire & M. Ins. Co.* 2 Pick. 249 ; *Hall* v. *Franklin Ins. Co.* 9 Pick. 466 ; *Winn* v. *Columbian Ins. Co.* 12 Pick. 279 ; *Bryant* v. *Commonwealth Ins. Co.* 13 Pick. 544. Here was not that imperious uncontrollable necessity for a sale, which is requisite to confer such an authority on a master. Indeed there was scarcely any necessity, or expediency, other than to charge the underwriters, and close the concern.

The vessel struck and was injured on the Carysford reef ; but she was got off, proceeded with part of her cargo to Key West, without repairs, proceeded thence to Mobile her port of destination, discharged her cargo, and there remained at a wharf, in the possession and under the command of one of the assured, with full and entire power and liberty to dispose of her as he thought best. Mobile is a port and post-town of the United States, from which a communication might have been made to the underwriters, in fifteen or twenty days, either directly by a notice of abandonment, or through the agency of the plaintiff, a resident merchant in Boston. The parties there were all in a situation freely to exercise their legal powers, and stand upon their legal rights, unaffected by any urgent and uncontrollable necessity, compelling the master to act for the owners If, then, the claim for a total loss, stood alone upon the fact of the sale, on the ground, that such a sale was author

ized by the exigencies of the case, and that thereby the property of the owners was rightfully and legally divested, it is very clear, that it could not be maintained.   Indeed it is not mainly contended for on the part of the plaintiff.   But it is alleged as a circumstance distinguishing this from the former cases, that here was a damage, by one of the perils insured against, so extensive, that if repaired, the cost would be so great, that the amount to be paid by the insurers, after the deduction of one third new for old, would exceed half the value of the vessel, when repaired.   The plaintiff offered evidence to prove this fact, which was rejected as insufficient to support the claim if proved, and therefore, for all the purposes of this argument, it is to be taken that such was the fact.

The argument then on the part of the plaintiff stands thus ; that damage to the ship by one of the perils assured against, to more than half the value, is, of itself, a substantive technical total loss, which will constitute a legal total loss, if followed by a seasonable notice of abandonment ; that when such notice of abandonment is given, it relates back to the acts constituting a total loss ; that from the occurrence of a constructive total loss, the master becomes the agent of the underwriters, who of course are responsible for his acts ; that if he makes an unauthorized sale, under those circumstances, the underwriters and not the assured must abide the consequences, because the master is the agent of the underwriters ; that such unauthorized act of the master, goes only to diminish the amount of salvage, to which by the abandonment the underwriters are entitled, and cannot affect the claim of the assured to recover the whole amount of the underwriters.   It is then contended, that here was a constructive total loss, that there was sufficient and seasonable notice of abandonment, and that this throws the responsibility of the intermediate acts of the master, including the unauthorized sale, upon the underwriters.

The principle upon which this argument is founded, is, as a general rule, correct, but it must admit of some exceptions and qualifications.   And we think the rule does not apply in the present case, to throw the responsibility of the unauthorized sale upon the underwriters, for several reasons.

First, because, though the rule is applicable in a case where

the master is a stranger, both to underwriters and the assured except so far as the relation of agent is created by the nature and duties of the office he holds, yet it is not applicable where the master is himself the assured, and does the act assumed to be unauthorized ; and secondly, because here was no sufficient right of abandonment, at the time the notice is supposed to have been given, and no sufficient notice of abandonment, for the cause now insisted on, to support the claim for a total loss.

The first of these objections is founded upon the peculiar circumstance in the present case, that the master who made the sale was himself one of the owners and assured. The objection stands upon two grounds ; one is, that a man can never aver his own unauthorized act, or other misconduct, as the foundation of a claim of right in himself ; and secondly, that if he had acted merely in pursuance of his supposed agency as a master, and from necessity, the owners might, as against the vendee, aver and show that there was no such necessity, that of course there was no such authority to sell, and of course that the property was not devested, and upon an abandonment the same right would be transferred to the underwriters, who might reclaim the vessel specifically and thereby avoid the consequences of such a sale, and the loss arising from it. But where a master stands in a double capacity, in one of which, namely, as master, he has no authority to make a sale, and in the other, as owner, he has such authority, and makes a sale, in whatever right or capacity he might profess to act, his act would take effect according to his authority. Being therefore owner, and as such having a right and power to sell, and being unauthorized to make a sale as master, his interest as owner would pass to the vendee, and he would thereby be incapacitated from making an effectual abandonment of the same interest and title to the underwriters. This very case is put by *Parker* J., in delivering the opinion of the Court, in illustration of the general rule, that to make an effectual abandonment, the assured must have the power of transferring the subject at the time of the abandonment. In truth, it is the same as if the plaintiff, after capture and recapture of his ship, had thought fit, not from necessity, to sell her ; in which case he could claim nothing of underwriters, but an indemnity for her

diminished value, in consequence of the peril insured against. *Higginson* v. *Dall*, 13 Mass. R. 102.

It seems, therefore, if this view of the case is correct, that if Tyler, the master, had been the sole owner, and made the sale under these circumstances stated, he would have been precluded from setting up such unauthorized sale, as the foundation of a claim, and the plaintiff having averred the insurance to be made on account of the owners and alleging the interest in them, would have stood on the same ground. Can the plaintiff then, in this action, distinguish between the interests of Waldo Peirce and Robert Treat, the other two owners, and that of Andrew Tyler, the master, and recover as for a partial loss upon one of those interests, and a total loss upon the two others ?

The averment in the declaration is of an interest in the three jointly, without alleging whether they were partners or tenants in common, and if tenants in common, in what proportions they were severally interested. Upon this declaration, therefore, as it stands, the interest of the parties as averred was a joint interest, they acted jointly in the claim, and there is nothing to show a several interest in the three persons respectively.

But the Court are strongly inclined to the opinion, that upon another ground the other two owners are bound by the act of Tyler in making the sale, and that is, subsequent ratification. The owners joined in a claim upon the underwriters, in which they set forth the sale of which they seem jointly to have received and credited the proceeds, and if they have ratified the sale, it has the same effect as if there had been a previous authority. If there was a previous authority or subsequent ratification, then the case stands on the same footing, as if Tyler had been the sole owner, and no form of claiming or declaring on the claim, could make any difference.

But it is of less consequence to consider whether, upon further averments and proofs, a better case could be made for the plaintiff, if the other part of the case is decisive.

It is a well settled rule, that upon a mere constructive total loss, there can be no recovery without an abandonment on the part of the assured ; that the right to abandon is a privilege which the assured may exercise or not, at his option ; and

whether the loss exceed or fall short of half the value, the assured, without abandonment, may always recover an indemnity according to the full amount of his actual loss proved. This rule is applicable to all cases, but the reason of it is peculiarly obvious where the ship remains in specie, accessible to the parties, and where the only ground of constructive total loss is damage requiring repairs to more than half the value.

Without adopting the opinion given at the trial, that this abandonment was insufficient because not in writing, an opinion which perhaps may require further consideration, the Court are all of opinion, that here was no sufficient abandonment, upon several grounds.

It is stated in the report, that in order to prove an abandonment, the plaintiff proposed to offer evidence to show that about the 13th of May, when the facts became known in this city, and the papers arrived, the plaintiff called at the office of the defendants with the protest and other usual documents to prove the loss, and a statement of the loss made up by an insurance broker, and demanded payment of a total loss.

The statement thus presented purported to be the statement of a claim for salvage loss on the vessel, incurred in consequence of getting on the Florida reef, on her voyage from New York to Mobile, at which latter place she was surveyed, condemned and sold for the good of all concerned. It then charges the value of the vessel, and credits by way of salvage, the proceeds of the sale of the vessel, first deducting al charges.

The first objection is, that here is no abandonment in point of fact, no relinquishment of the vessel or of any interest in the vessel, but on the contrary, the claim proceeds on the basis of affirming the sale made at Mobile and treating it as a valid sale. Then the principle already alluded to, applies, that by making a sale, in fact unauthorized, they had incapacitated themselves from making a valid abandonment of the vessel, and could only therefore claim for a partial loss.

But if this is considered as putting too harsh a construction upon the act of the plaintiff, and it must be considered that his object was to present the state of facts to the underwriters, and

to claim according to the legal rights of those whom he repre-sented, it may be proper to examine this proceeding further.

It is obvious, that the plaintiff himself not being the owner of the vessel, and having no power of disposing, had no capacity to abandon, except in virjue of an authority derived from the owners. Perhaps, however, in the absence of proof, he being the agent of the owners to insure, his agency might be pre-sumed for this purpose, if there were no other ground of objec-tion. Now supposing for the purpose of the argument, that the plaintiff was duly authorized to abandon, and that a parol abandonment was valid, still though no particular form of aban-donment is necessary, yet in substance it must be positive and absolute, not fettered by contingencies, conditions, or limita-tions, and must, in express terms or by necessary implication, import an actual present relinquishment of the interest or sub-ject matter to which the abandonment applies, and must truly state the reasons or grounds upon which the abandonment is made and a total loss claimed.

A question has been made, whether a claim for a total loss does not necessarily imply an abandonment. It is difficult to answer a question thus nakedly presented. Upon principle it would seem, that a mere claim for a total loss does not neces-sarily imply an abandonment, because in some cases a total loss may be recovered without abandonment. *Idle* v. *Royal Exch. Ass. Co.* 8 Taunt. 755. But commonly a claim for a total loss will be accompanied by a statement of facts and cir-cumstances, by the reasons and grounds of claim upon which the assured proceeds, and such statements of the grounds of claim may perhaps carry as plain an implication of actual aban-donment as could be done by express words : though it was stated by Lord *Ellenborough*, that an implied parol abandon-ment is too uncertain, and cannot be supported. *Parmeter* v. *Todhunter*, 1 Campb. 541.

But without considering other objections to this proceeding as an abandonment, there is one which goes to the merits and is decisive. It has already been mentioned as a requisite to a good abandonment, that it must state the reasons and grounds upon which a total loss is claimed.

The underwriters ought to be informed by the assured, who

alone know the fact, of the nature of the constructive total loss, upon which the claim is made, that they may judge whether they will accept the abandonment, and that they may forthwith take the necessary measures which such an acceptance would render necessary and proper. And the assured cannot avail himself of any other ground, than that stated by him at the time of abandoning. The ground must be stated with sufficient certainty to enable the underwriters to decide whether they will accept the abandonment. If the ground stated is insufficient, they will be justified in refusing to accept it, and if there be another ground sufficient in fact, but no notice of it communicated to the underwriters, it is ineffectual to found a claim for a total loss, as if no abandonment at all had been made. *Suydam* v. *Mar. Ins. Co.* 1 Johns. R. 181. In the present case, the only act relied upon as constituting an abandonment by the plaintiff, was the presentment of the claim in writing as for a total loss, upon the ground of damage done to the vessel on the Florida reef, and of her being afterwards surveyed, condemned and sold, " for the good of all concerned." If this can be considered an abandonment by implication, it was not because the vessel had been so damaged as to require repairs to more than half her value, but for another and different reason, namely, because she had been condemned and sold. Upon this latter ground there was clearly no right to abandon, for the reasons before mentioned, and the underwriters were therefore right in rejecting the abandonment. Had the abandonment been made on the ground, that the vessel had gone into Mobile, requiring repairs to more than half her value, the underwriters would have known that as this abandonment was founded on a cause which preceded the sale, it would take effect so as to vest the property in them from the time of the happening of the cause on which it was founded, and if the sale was not made upon such necessity as to warrant it, it was void, and they could reclaim the property.

The Court are therefore of opinion, that if the plaintiff could now prove a substantive ground of total loss from damage to the vessel, requiring repairs to more than half her value, on her arrival at Mobile, and before the sale, which might have warranted an abandonment upon that specific ground, so as to

throw the responsibility of the master's unauthorized acts, including the sale of the interest of the two other part owners, upon the underwriters, still there was no abandonment upon that ground or for that reason ; the abandonment, therefore, did not relate back to a period anterior to the sale, so as to warrant the two other part owners in repudiating that sale, and throwing the responsibility and the consequences of it upon the underwriters, if upon other grounds they might have done so.